**Civ-23-15912**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

Sabrina Beram,

Plaintiff/Appellant,

v.

City of Sedona,

Defendant/Appellee.

---

On Appeal from the United States District Court
District of Arizona
DC Case No. CV-21-08063
Hon. Diane J. Humetewa

---

# APPELLANT'S OPENING BRIEF

---

Pamela Bridge, Esq.
Martin J. Coleman, Esq.
Bret Rasner, Esq.
Community Legal Services, Inc.
141 S. McCormick St., Suite 200
Prescott, AZ 86303
(928) 445-9240
yavapai@clsaz.org
*Attorneys for Plaintiff/Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... vi

INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 4

STATUTORY AUTHORITIES .......... 5

ISSUES PRESENTED .......... 6

STATEMENT OF THE CASE .......... 7

I. The Sedona City Code .......... 9

II. Enforcement of the Code on third parties .......... 9

III. Enforcement of the Code on Sabrina from Sedona .......... 10

IV. Enforcement of the Code on Sabrina from her landlord .......... 11

V. Request for reasonable modification from Sedona .......... 12

VI. Procedural history .......... 13

VII. Sabrina's ongoing situation .......... 16

SUMMARY OF THE ARGUMENT .......... 17

I. Sabrina has standing under the ADA and Eighth Amendment. .......... 17

II. Sabrina stated claims under the ADA and Eighth Amendment. .......... 20

STANDARD OF REVIEW .......... 22

ARGUMENT ........................................................................................24

I. Sabrina established standing under the ADA and Eighth Amendment because she has suffered an injury-in-fact, the injury is traceable to the challenged action of Sedona, and a favorable decision can redress the injury....24

II. Sabrina has standing for her ADA claim. ................................................28

A. Sabrina has standing because she has encountered a barrier violating the ADA. ..........................................................................................28

B. Sabrina also has standing because she showed a sufficient likelihood that she will be wronged in a similar way. ..........................................................29

C. Sabrina's injuries stem from Sedona's written policy. ...........................30

D. The past wrongs of Sedona and the landlord are evidence of the risk of repeated injury.......................................................................................32

III. Sabrina has standing for her Eighth Amendment claim. ...........................34

A. Sedona previously enforced the Code against Sabrina. ..........................34

B. Sabrina proved a genuine threat of enforcement....................................36

1. Sabrina articulated a concrete plan to violate the Code.......................36

2. Sedona communicated a specific warning to Sabrina. .........................37

3. Sedona has a history of enforcing the Code. .......................................37

IV. Sabrina stated Fed. R. Civ. P. 12(b)(6) claims under the ADA and Eighth Amendment. ....................................................................................... 41

V. Sabrina stated a claim under the ADA ...................................................... 42

A. Sabrina's obsessive-compulsive disorder establishes her as a qualified individual with a disability ........................................................................ 43

B. Sabrina was excluded from the benefit of the Code and Sedona discriminated against Sabrina. .................................................................. 43

C. Sedona's discrimination was by reason of Sabrina's disability. ............. 45

VI. Sabrina stated a claim under the Eighth Amendment. ............................... 46

A. Sabrina stated a claim under the Eighth Amendment because Sedona enforced a criminal code against her because of her status. ........................... 46

B. Sabrina stated a claim under the Eighth Amendment because Sedona enforced a criminal code against her when she has no adequate available alternative shelter. ......................................................................... 47

VII. Because Sabrina has standing to bring her ADA and Eighth Amendment claims and stated claims that relief can be granted under those claims, the district court erred in denying Sabrina's Motion for Leave to File Amended Complaint. ........................................................................................ 48

A. Sabrina established the facts required by the district court. .................... 49

B. The district court failed to consider this Court's broad view of standing under the ADA. ....................51

C. The district court erred in not considering that past enforcements against Sabrina established a genuine risk of future enforcement. ....................52

CONCLUSION ....................53

## TABLE OF AUTHORITIES

**Cases**

*Adult Video Ass'n v. Barr*, 960 F.2d 781 (9th Cir. 1992) ....................................38

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) .................................. 18, 30, 52

*Babbitt v. United Farm Workers National Union*, 442 U.S. 289 (1979) ................34

*Baker v. Cuomo, 58 F.3d 814* (2d Cir. 1995), cert. denied sub nom., *Pataki v. Baker*, 516 U.S. 980 (1995), vacated in part on other grounds, 85 F.3d 919 (2d Cir. 1996) (en banc) ..........................................................................41

*Chapman v. Pier 1*, 631 F.3d 939 (9th Cir. 2011) ......................... 18, 28, 29, 30, 51

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .................................. 18, 29, 32

*Cohen v. City of Culver*, 754 F.3d 690 (9th Cir. 2014) .................................. 21, 42

D*oran v. 7-Eleven*, 524 F.3d 1034 (9th Cir. 2008)............................. 18, 28, 29, 51

*Elec. Constr. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619 (9th Cir. 1985) ..........................................................................................42

*Eminence Capital, LLC. v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003)................49

*Fortyune v. American Multi-Cinema*, 364 F.3d 1075 (9th Cir. 2004).............. 31, 52

*Humphrey v. Memorial Hospital, Assn.*, 239 F.3d 1128 (9th Cir. 2001) ................29

*Johnson v. City of Grants Pass*, 72 F.4th 868 (9th Cir. 2023) ........................ 21, 47

*Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), vacated, 505 F.3d 1006 (9th Cir. 2007)..........................................................................46

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ....................................21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............. 17, 18, 24, 27, 28, 34

*Martin v. City of Boise*, 920 F. 3d 584 (9th Cir. 2019).............. 2, 12, 21, 42, 46, 47

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004)...................... 42, 43, 44

*Meland v. WEBER*, 2 F.4th 838 (9th Cir. 2021)....................................................22

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021) . 23, 47

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528 (9th Cir. 2019)...........................................................................................22

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .................................................. 19, 29, 32

*Oklevueha Native American Church of Hawaii v. Holder*, 676 F.3d 829 (9th Cir. 2012) ....................................................................... 19, 20, 34, 35, 36, 40, 41, 52

*Perez v. Mortg. Elec. Registration Sys., Inc.*, 959 F.3d 334 (9th Cir. 2020)...........23

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 690-91 (2001).......................................32

*Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002).......... 30, 52

*Powell v. Texas*, 392 U.S. 514, (1968) .................................................................46

*Preminger v. Peake*, 552 F.3d 757 (9th Cir. 2008)................................................22

*Roberts v. Corrothers*, 812 F.2d 1173 (9th Cir. 1987) ............................. 23, 26, 27

*Robinson v. California*, 370 U.S. 660 (1962) ........................................................46

*Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006)...............36

*Susan B. Anthony List v. Driehas*, 573 US 149 (2014)..........................................34

*Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023) ................................ 19, 35, 36, 37, 40

*Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205 (1972) .......................................28

*Unified Data Servs., LLC, v. Federal Trade Commission*, 39 F.4th 1200 (9th Cir. 2022) ................................................................................................ 19, 40

*V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC*, 946 F.3d 542 (9th Cir. 2019) .........................................................................................................23

*Warren v. Fox Family Worldwide*, 328 F.3d 1136 (9th Cir. 2003)................. 25, 39

*Warth v. Seldin*, 422 U.S. 490 (1975).................................................................41

*Western Center for Journalism v. Cederquist*, 235 F.3d 1153 (9th Cir. 2000).......47

*Wong v. Regents of Univ. of Cal.*, 192 F.3d 807 (9th Cir. 1999)............................45

**Statutes**

28 U.S.C. § 1291 ..................................................................................................4

28 U.S.C. § 1331 ..................................................................................................4

42 U.S.C. § 12131(2) ....................................................................................... 21, 43

42 U.S.C. § 12132...............................................................................................2, 43

42 U.S.C. § 3604(f)(3)(B)................................................................ 2, 3, 13, 14

Sedona City Code 9.10.010 ......................................... 1, 2, 5, 15, 16, 17, 24, 29, 39

Title II of the Americans with Disabilities Act................................... 3, 4, 6, 13, 14

**Rules**

Fed. R. App. P. 4(a)(1)A) .........................................................................................4

Fed. R. Civ. P. 12(b)(6) .......... 23, 41

**Treatises**

5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1357, at 601–03 (1969) .......... 42

**Regulations**

28 C.F.R. § 35.104 .......... 21, 43

28 C.F.R. § 35.130(a) .......... 21

28 C.F.R. § 35.130(b)(7) .......... 43, 44

**Constitutional Provisions**

Eighth Amendment to the United States Constitution .......... 2, 3, 12, 13, 14

## INTRODUCTION

In the evening of November 2020, Sabrina Beram ("Sabrina") was sleeping in her car at a public trailhead in Sedona, Arizona, when a knock at her car window awakened her. If that had not been terrifying enough, she had already experienced an episode that evening when she tried to enter her apartment and felt like an electric fence was at her door. The fence that compelled Sabrina not to pass into her apartment that November night is a frequent, immutable part of her being. As a direct consequence of her chronic obsessive-compulsive anxiety disorder disability, she cannot enter her apartment and is involuntarily forced to sleep in her car when these episodes occur.

Living with a disability that frequently prevents her from entering her own home has been a struggle for Sabrina. Still, she has never disturbed anyone else in her exhausting evening struggles. She prefers to find spots in her apartment complex parking lot to sleep in her car. However, when she cannot find suitable spots in the lot, she is forced to find public spaces to sleep in her car, and such was the situation on that November night she slept in her car at the trailhead. As she awoke that evening, she realized a police officer was outside her car window. The police officer ordered Sabrina to leave and told her the Sedona would keep her name and license number in their file. The police officer issued Sabrina a warning according to Sedona City Code 9.10.010 ("Code"), which prohibits, among other things, sleeping in a

vehicle on any public or private property. The Code states that private owners may not allow this activity either and may be cited for allowing the activity. Interestingly, Sedona, which fails to maintain any homeless shelters, still chooses to enforce the Code even after the decision in *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019).

Sabrina is not a typical challenger to city anti-camping statutes. She has an apartment that she rents but must sleep in her car because of her disability at least three nights per week. When Sabrina's property manager discovered she was sleeping in her car, they informed her they would not renew her lease if she continued to violate the Code by sleeping in her car. Sabrina asked Sedona to grant her a reasonable modification and not enforce the Code against her when she slept in her car. Sedona refused her request for reasonable modification. Sabrina then requested a revised reasonable modification to not enforce the Code against her while she slept in her car in the parking lot of her rental unit. Again, Sedona refused.

Sabrina then filed a federal lawsuit against Sedona and her property manager and property owner for violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, the Eighth Amendment to the United States Constitution and 42 U.S.C. § 3604(f)(3)(B) (Fair Housing Act, "FHA"). After Sabrina filed this lawsuit, she reached a settlement agreement ("Agreement") with the property owner and manager allowing her tenancy to continue and to sleep in her car through May 31, 2022, with a caveat that the Agreement could be voided by the property owner if

Sedona warns or cites Sabrina the owner or the manager under the Code. Following the Agreement, Sabrina amended her complaint by dismissing the owner and manager and her claim under the FHA.

Even after Sabrina initiated litigation in this matter, Sedona continued to enforce the Code against her. On September 10, 2022,[1] Sabrina needed to move her car to a public spot so she could sleep because she could not find an appropriate spot at her rental complex parking lot. She once again suddenly awoke from sleep to a Sedona police officer standing outside her car window in a parking lot at a Sedona park. The police officer warned her to leave the park immediately or the police officer would give her a criminal citation under the Code.

The district court failed to consider this Court's rulings concerning standing for ADA claims. It granted Sedona's Motion to Dismiss based upon lack of standing because the district court found Sabrina failed to show a genuine threat of prosecution. Because the district court's decision is based on standing, the district court failed to analyze arguments concerning Sabrina's claims. This Court should review Sabrina's claims de novo under its ADA and Eighth Amendment case law and find that she has proven standing and claims for which relief can be granted.

---

1 While Sabrina's proposed Fourth Amended Complaint states that this occurred in October 2022, Sabrina has learned that the event actually took place in September, 2022.

Sabrina continues to be forced to sleep in her car and violate Sedona law due to her disability. In May 2022, her property manager renewed her tenancy and Sabrina remains in her rental apartment, but the Agreement is still contingent on neither the owner, manager nor Sabrina receiving a warning or citation from Sedona concerning the Code.[2] Because of Sedona's unwillingness to grant her a necessary and reasonable modification, Sabrina remains fearful that knock in the middle of the night will once again force her to move her car to find another location or that she will spend the rest of that night in a jail cell.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331 through the ADA and the Eighth Amendment. On May 19, 2023, the district court denied Sabrina's Motion for Leave to File a Fourth Amended Complaint with prejudice and ordered the Clerk of Court to dismiss the action without further order of the district court. This Court has jurisdiction over the appeal of the district court's decision under 28 U.S.C. § 1291. Pursuant to Fed. R. App. P. 4(a)(1)A), Sabrina timely filed her Notice of Appeal on June 16, 2023.

---

2 Sabrina believes this Court should be informed of her current living situation to review her standing claims.

## STATUTORY AUTHORITIES

Sedona City Code 9.10.010 – Camping and sleeping in certain places.

A. It shall be unlawful for any person to set up, use or maintain any temporary structure, tent, bag, vehicle, camper or any other thing for the purpose of camping, lodging, sleeping, cooking, or starting or maintaining a campfire, or establishing a temporary place of rest, on any public property within the city limits unless exempted by the following subsections.

B. It shall be unlawful for any person to set up, use or maintain any temporary structure, tent, bag, vehicle, camper or any other thing for the purpose of camping, lodging, sleeping, cooking, or starting or maintaining a campfire, or establishing a temporary place of rest, on any private property within the city limits unless exempted by the following subsections.

C. It shall be unlawful for any person to sleep in or upon any public building, alley, sidewalk, public way, or any federal, state, county or municipal designated trail head, or any property owned, operated or managed by any local, state or federal agency or department or any Indian tribe, or any other public place or facility within the corporate limits of the city.

D. It shall be unlawful for any property owner of any private property, or any manager, renter, lessee or agent thereof, to knowingly permit any person to violate this section.

E. No person shall be arrested for a violation of any provision in this section unless such person continues to engage in such conduct after warning by any police officer, an authorized representative of the government entity managing or responsible for such public property, or the property owner, manager, renter, lessee or agent thereof, as the case may be, or unless such property is conspicuously posted, warning of the provisions of subsection (A), (B) or (C) of this section, and designating such violation thereof as a misdemeanor.

…………..

> K. Any violation of this section shall constitute a class 1 misdemeanor punishable by a fine of not less than $2,500 or by six months in jail, or both. [Code 2006 § 10-3-1].
>
> The Sedona City Code is current through Ordinance 2021-01, passed January 12, 2021.

## ISSUES PRESENTED

1. Whether Sabrina established standing for her claim under the ADA by pleading that police officers twice forced her to leave places where she slept in her car and issued a warning, her landlord threatened her with non-renewal of her lease because of the Code, and Sabrina continues to face the barrier of enforcement of a written law weekly.

2. Whether Sabrina established standing for her claim under the Eighth Amendment by pleading that police officers twice forced her to leave places where she slept in her car and issued a warning, her landlord threatened her with non-renewal of her lease because of the Code, Sabrina and others faced enforcement by Sedona previously, and she continues to violate the Code while facing arrest and lease termination.

3. Whether Sabrina stated claims under the ADA for which relief can be granted, by pleading that she is an individual with a disability whose written requests to Sedona for a reasonable modification from application of the Code were unreasonably denied.

4. Whether Sabrina stated claims under the Eighth Amendment for which relief can be granted when pleading that she is compelled to sleep in her car due to her obsessive-compulsive disability and there are no homeless shelters in Sedona.

5. Whether the district court erred in denying Sabrina's Motion for Leave to File Fourth Amended Complaint when she established standing under the ADA and the Eighth Amendment and pleaded claims under those laws for which relief can be granted.

## STATEMENT OF THE CASE

Since she was a child, Sabrina has lived with a severe, chronic obsessive-compulsive anxiety disorder disability which impairs her normal daily functioning. ER-102, 126. Because of her disability, when Sabrina perceives unclean conditions in her apartment, she must perform intensive, time-consuming cleaning rituals designed to make the unclean conditions tolerable so she can sleep in her apartment. ER-102, 126. These rituals can take several hours to perform. ER-102, 126. Approximately three nights a week, she intuitively concludes she cannot complete her cleaning rituals within enough time to obtain a restful sleep. ER-102, 126. When this occurs, she experiences a strong sensory perception that she describes as like an electric fence beyond the entrance area of her apartment that commands her not to enter further into the apartment. ER-102-103, 126. During these incidents, when she is unable to sleep in her apartment, she sleeps in her car as a coping mechanism. ER-

103, 126. Sleeping in her car is an involuntary act because she is unable to control the thoughts, emotions and behavior that cause her to sleep in her car. Her car provides simpler, easier cleaning routines she can manage during episodes caused by her disability. ER-103, 126.

On nights Sabrina is forced to sleep in her car, she has no adequate, available, alternative shelter. Her disability precludes her from staying in a homeless shelter because she cannot control the cleanliness of the sleeping spaces at the shelter. ER-24, 106. Regardless, there are no homeless shelters in Sedona. ER-105, 131. The closest one is 19 miles from Sedona in the city of Cottonwood and even then, is only authorized to open 20 beds and only when the temperature falls below 35 degrees. ER-24, 105-106.

Although Sabrina received mental health treatment at different points in her life, none of these treatments cured her disorder. ER-103. A psychologist who specializes in obsessive-compulsive disorder treated Sabrina from 2006 through 2011. Even with treatment, Sabrina does not have the ability to cease the affliction this disability imposes on her life. ER-126.

In April of 2020, Sabrina moved to Sedona, Arizona into an apartment in a multi-family, multi-building apartment complex where she currently resides owned by Sedona Wyndham Apartments, LLC and managed by Sanjo Investments (hereafter "landlords"). ER-15, 103, 106. Since moving to Sedona, Sabrina slept in

her car in various public and private spaces, including the parking lots at her current apartment complex. ER-107. Sabrina prefers to sleep in her car at her apartment complex instead of public locations because she does not have to expend time to locate suitable alternative spaces for her to sleep in her car. ER-18. However, on nights she cannot find suitable parking spaces to sleep in her car at her apartment, she sleeps in her car in public locations in Sedona. ER-107. From April 2020 to November 2020, she estimates she slept in her car 84 times and half of those nights were in public spaces. ER-107.

## I. The Sedona City Code

The Code prohibits individuals from sleeping in their cars on private or public property. Even private owners may not knowingly allow people to sleep in cars on their property. Both the person sleeping in a car and private owners permitting such activity may be arrested and receive a class 1 misdemeanor for this activity, but only after a warning by a police officer or property owner. S.C.C. 9.10.010.(E), (K).

## II. Enforcement of the Code on third parties

Sedona has issued at least two criminal citations against individuals for violations of the Code. ER-60, 76. On October 5, 2021, at approximately 3:45 AM, two individuals received citations for sleeping in their car on private property in Sedona. ER-60, 76. One of the individuals received two previous warnings by police officers under the Code and one of the individuals received one prior warning under

the Code. ER-55. An additional individual was also sleeping in his car on private property that evening, but because he had not received prior warnings, the police issued him a warning. ER-55.

### III. Enforcement of the Code on Sabrina from Sedona

In November of 2020, while Sabrina was sleeping in her car at a public trailhead, a Sedona police officer knocked on her window and told her she had to leave the trailhead. ER-15-16, 106. The officer told her that he put a note in a file associated with her name and license plate so police would know that he warned her. ER-16.

On September 10, 2022, at approximately 4:00 A.M., (*See* p.2 n.1) a police officer knocked on Sabrina's car window while she was sleeping in a park and woke her up. ER-12-13, 16. The police officer warned Sabrina that sleeping in her car was illegal and that she had to move her car or she would face a citation under the Code. ER-13, 16. When Sabrina suggested that she had an exception from Sedona, the police officer told her there were no exceptions. ER-13. Again, Sabrina moved her car because the police were enforcing the Code. ER-13. The police officer reported that Sabrina stated she had a place to stay, "but sometimes likes to sleep in nature," and then filed Sabrina's violation of the Code as an incident report. ER-13.

### IV. Enforcement of the Code on Sabrina from her landlord

Around Thanksgiving of 2020, the landlord of Sabrina's apartment building became aware that Sabrina sleeps in her car on the premises of her apartment complex and sent her an e-mail which threatened to terminate her lease. ER-18, 107. In a reply e-mail, Sabrina explained that she has a disability that causes her to sleep in her vehicle. ER-18. Sabrina asked the landlord to give her a reasonable accommodation based on her disability which would allow her to sleep in her car on the apartment complex premises. ER-18, 104. The landlord failed to respond to this request for a reasonable accommodation. ER-104.

In December 2020, on behalf of Sabrina, Community Legal Services ("CLS") sent the landlord a letter requesting a reasonable accommodation under the FHA that would permit Sabrina to sleep in her car on the apartment complex premises. ER-18, 136. The landlord again failed to respond to this request. ER-18, 136. Instead, on January 27, 2021, the landlord sent Sabrina an Addendum to her former lease as an offer to renew the lease. ER-18, 110. The Addendum reads in relevant part as follows:

> "[t]he following additional terms are hereby included as a part of the Contract…for the above referenced premises:
>
> The Notice of Nonrenewal of Lease Agreement dated November 25th, 2020, can only be cured if the Tenant and Landlord agree to the following modifications of the current lease.

> The City of Sedona does not permit sleeping in vehicles within the city limits. The unit you are living in…is part of a Planned Development within the city limits of Sedona. You as a tenant agree not to sleep in any vehicle that is parked within the Planned Development Boundary.
>
> …. Any breach of these terms will become a non-curable condition." ER-18-19, 110.

From January 27, 2021, through June 11, 2021, the effect of the warnings from the landlord caused Sabrina to cease sleeping in her car in the parking lots of her apartment complex and to search for other places in Sedona to sleep in her car. ER-19. Sabrina spent an additional 115–135 hours searching for alternative sleeping locations in her car as a result of not sleeping at her apartment complex. ER-19.

### V. Request for reasonable modification from Sedona

On February 10, 2021, on behalf of Sabrina, CLS sent two letters to the Mayor of Sedona. ER-128-129. The first letter requested that Sedona grant Sabrina a reasonable modification under ADA on the basis of her disability that would relieve her from any application of the Code when she sleeps in her car in Sedona. ER-18-129. The letter was accompanied by a letter from Dr. Sharline Mashack, who identified Sabrina's disability and explained that sleeping in her car is a coping mechanism to her disability. ER-112, 129. The second letter to the Sedona Mayor alleged that the Code was unconstitutional under the Eighth Amendment based on the *Martin v. City of Boise* case. ER-129. The letter asked Sedona to voluntarily rescind the Code. ER-129.

Sedona's City Attorney sent a letter to CLS dated February 22, 2021, which denied Sabrina's February 10, 2021 request for a reasonable modification under the ADA. ER-120, 129. The City Attorney alleged Sedona lacked authority to allow Sabrina to sleep in her car on private property. ER-120-121. On March 2, 2021, CLS informed the City Attorney by email that Sabrina's landlord was planning to not renew her lease as long as the Code makes Sabrina's required activity of sleeping in her car illegal. ER-122.

On February 24, 2021, CLS sent an e-mail to the City Attorney which made an alternative reasonable modification request under the ADA. ER-21, 123, 129. This request proposed that Sedona refrain from charging Sabrina with any violation of the Code while she sleeps in her car on the premises of her apartment complex. ER-21, 123, 129. On March 1, 2021, the City Attorney denied Sabrina's revised reasonable modification request. ER-21, 122, 129.

## VI. Procedural history

On April 2, 2021, Sabrina filed a federal lawsuit in the district court of Arizona against Sedona for violations of the ADA and the Eighth Amendment and against the landlord for violations of the FHA. ER-133.

On June 11, 2021, Sabrina entered into the Agreement with the landlord. ER-21. The Agreement allowed Sabrina to renew her lease until May 31, 2022, with the stipulation that the settlement could be voided if Sabrina or the landlord receive a

warning or citation under the Code. ER-21. Sabrina amended her complaint on June 21, 2021, removing the landlord and her FHA claim from the lawsuit. ER-125.

Sedona filed a Motion to Dismiss on July 16, 2021, alleging Sabrina's complaint lacked jurisdiction and failed to state a claim. ER-150. Sedona argued that Sabrina failed to establish standing for her ADA and Eighth Amendment claims. Attached to Sedona's motion was a declaration from Charles Husted, the Chief of Police for Sedona in July 2021, who stated that the Sedona Police Department failed to have any contact with Sabrina concerning the Code. ER-118. Sedona also attached select correspondence between CLS and Sedona concerning Sedona's denial of Sabrina's requests for reasonable modification. ER-120-124.

On August 16, 2021, Sabrina filed her Response to the Motion to Dismiss with her affidavit which stated Chief Husted was incorrect and she had in fact received a warning pursuant to the Code from a police officer in November 2020. ER-102, 150. She also explained that it is necessary for her to sleep in her car in private and public places because of her disability and that she will continue to need to sleep in her car at least three times a week. ER-103, 107. The response also included the landlord's addendum, ER-110, a medical letter from Dr. Sharline Mashack, ER-112, and an article about the case, publicly stating Sabrina's name. ER-113-117. Sabrina also filed a request for leave to amend her complaint. ER-150.

Sedona filed its reply on September 7, 2021, attaching an amended declaration from Chief Husted who stated he looked through the police records again and could not find any mention of any contact with Sabrina and the police concerning the Code. ER-89, 150.

On February 28, 2022, the district court granted Sedona's Motion to Dismiss, denied Sabrina's Motion for Leave to Amend, but allowed her to file a new motion for leave to amend. ER-77. The district court stated, "To the extent Plaintiff can show that her property manager has invalidated the settlement agreement and/or Defendant intends to prosecute Plaintiff despite the agreement, she may be able to allege sufficient injury giving her standing to challenge the Code." ER-87.

Sabrina filed her Motion for Leave to File a Third Amended Complaint on March 15, 2022. ER-151. Sabrina included public records showing that two individuals were cited under the Code after receiving warnings like Sabrina's warnings for sleeping in their car on October 5, 2021. ER-49-76. (discussed above in Enforcement of the Code on third parties.). The proposed Third Amended Complaint also stated that the Agreement will expire May 31, 2022, and allowed the landlord to rescind it if they or Sabrina receive a warning or citation from Sedona of a violation of the Code. ER-43. Sedona responded on March 28, 2022, and showed documents that the criminal citations against the two individuals were later dismissed. ER-34-35. Sabrina filed her reply on April 4, 2022. ER-151.

The district court denied Sabrina's Motion for Leave to Amend on February 8, 2023, and ordered that Sabrina could file a motion to seek leave to file a fourth amended complaint. ER-27. In the Order, the court stated, "[i]f Plaintiff can allege facts that do more than speculate that the City of Sedona intends to enforce the Code against her, the Court will allow her one more chance to do so." ER-33. Sabrina filed her Motion for Leave to File Fourth Amended Complaint on February 21, 2023, which provided the fact that the police enforced the Code against Sabrina in October 2022, and forced her to move her car in the middle of the night. ER-16. On March 6, 2023, Sedona responded by referring to and quoting from the incident report of this enforcement. ER-12-13. The incident report showed that the enforcement happened on September 10, 2022 and Sabrina acknowledges she made a mistake with the date. ER-12-13. (*See*, p. 3, n.1).

On May 19, 2023, the district court denied Plaintiff's Motion for Leave to File Fourth Amended Complaint with prejudice. ER-11. Because the district court found that Sabrina lacked standing, it did not analyze whether she had stated claims for which relief could be granted.

**VII. Sabrina's ongoing situation**

Because of her disability, Sabrina needs to continue to sleep in her car approximately three times a week. ER-107. On March 7, 2022, a psychologist who treated Sabrina before she moved to Sedona, then resumed her treatment in 2021,

found that Sabrina's anxiety increased and her mental condition deteriorated as a result of the Code and Sedona's enforcement activities. ER-19. Sabrina alleged overwhelming mental anxiety and depression from the fear of being arrested and losing her home. ER-108. She continues to reside in her apartment complex (*See* p. 4, n.2) and her tenancy continues to be threatened because the landlord can rescind the Agreement if she or the landlord receive a warning or citation concerning the Code. ER-21.

## SUMMARY OF THE ARGUMENT

### I. Sabrina has standing under the ADA and Eighth Amendment.

This Court should find Sabrina has standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) and this circuit's case law under the ADA and Eighth Amendment. Sabrina meets the standard for injury-in-fact under *Lujan* because she alleged injury-in-fact when Sedona enforced the Code against her twice by ordering her to move her car each time the police encountered her sleeping in the car and by initiating the first step of the criminal citation process by issuing her a warning. *Id.* at 560. Additionally, she demonstrated injury-in-fact because her landlord previously refused to renew her lease unless she complied with the Code and can rescind her Agreement if they or she receive a warning or citation from Sedona. Sabrina meets the second *Lujan* factor because Sedona's enforcement and the landlord's refusal to renew result from the application of the Code to her obsessive-

compulsive disorder. *Id.* Finally, Sabrina meets *Lujan's* third factor because a favorable decision will prevent future enforcement of the Code against her. *Id.* at 561.

This Court should review standing broadly under the ADA. *Doran v. 7-Eleven*, 524 F.3d 1034, 1039-40 (9th Cir. 2008). In her operative complaint and proposed Fourth Amended Complaint, Sabrina demonstrated injury-in-fact under the ADA when Sedona twice required her to move her car in the middle of the night, issued her a warning threatening future criminal prosecution, and denied her a reasonable and necessary modification of the Code. *See Chapman v. Pier* 1, 631 F.3d 939, 947-50 (9th Cir. 2011). Further, she met the burden of injunctive relief under the ADA by showing, "sufficient likelihood she will be wronged in a similar way" in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). First, she has no choice but to continue noncompliance with the Code by sleeping in her vehicle at least three times a week. ER-107. *See Chapman v. Pier 1*, 631 F.3d at 948. Second, in the Code, Sedona has a written policy from which Sabrina's injuries stem. *See Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001). Third, past enforcement actions and discrimination by Sedona and the landlord because Sabrina slept in her car are evidence Sabrina will be injured again in the future when she sleeps in her car. *Chapman v. Pier 1*, 631 F.3d at 950-51. Sedona committed past wrongs by enforcing the Code against her and denying her reasonable modification requests.

Her landlord committed past wrongs by refusing to renew her lease unless she stops sleeping in her car on the premises, and by stating an intention in the Agreement to rescind the Agreement if Sedona warns or cites them. Because Sabrina is certain to sleep in her car in the future every week she lives in Sedona because of her disability, the risk of future enforcement of the Code against her is imminent. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (unlike respondents in *O'Shea*, Sabrina's future violations of the Code are not conjectural).

Sabrina has standing under the Eighth Amendment because the Code has already been enforced twice by Sedona against her. *Oklevueha Native American Church of Hawaii v. Holder*, 676 F.3d 829, 836-37 (9th Cir. 2012) (finding if an individual faced enforcement of a code previously, she is not required to show a specific threat of future prosecution). If this Court finds that *Oklevueha* applies to Sabrina and she has faced previous enforcement, then it does not need to analyze whether there is a genuine threat of enforcement. *Id.*

*Teter v. Lopez*, 76 F.4th 938, 946 (9th Cir. 2023) supports the holding in *Oklevueha* when it held that "Hawaii's suggestion that a plaintiff must always prove 'a specific warning or threat to initiate proceedings' has no basis in our precedent." *Id.* Sabrina can still prove a credible threat of enforcement in light of the totality of her circumstances. *Teter v. Lopez*, 76 F.4th at 946; *See Unified Data Servs., LLC, v. Federal Trade Commission*, 39 F.4th 1200, 1210–11 (9th Cir. 2022). First, Sabrina

articulated a concrete plan to violate the law because she must sleep in her car at least three times a week. Second, in the night hours of November 2020 and September 10, 2022, Sedona woke Sabrina from sleep, forced her to leave in her car, and communicated specific warnings which are conditions precedent to prosecution under the Code. Apart from the two police warnings, the landlord sent Sabrina a lease addendum which stated that her lease will not renew if she is in violation of the Code and that the prohibited activity is a non-curable violation. The addendum communicated a threat of non-renewal of her lease if she violated the Code by sleeping in her car on the rental premises and could be used by Sedona to establish a requisite warning under the Code. Third, Sedona has a history of past enforcements under the Code since it enforced the Code not just against Sabrina but issued warnings and/or citations to at least three other people, two of whom had past warnings issued to them under the Code. The totality of the foregoing circumstances supports Sabrina's standing even without proof of a credible threat of future prosecution. *Id.*; *Oklevueha v. Holder*, 676 F.3d at 836-37.

**II. Sabrina stated claims under the ADA and Eighth Amendment.**

This Court should find that Sabrina has stated claims under the ADA and Eighth Amendment.

Sabrina established a claim under the ADA. First, her obsessive-compulsive disorder impairs her normal daily functioning and, therefore, meets the definitions

under 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104 as a qualified individual with a disability. Second, the Code qualifies as a public service, program, or activity under the ADA. 28 C.F.R. § 35.130(a); *See Cohen v. City of Culver*, 754 F.3d 690, 695 (9th Cir. 2014) ("We have explained that the broad language of Title II brings within its scope 'anything a public entity does.'" (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001)). The Code was discriminatorily applied to Sabrina when Sedona refused to grant her requests for reasonable modification and enforced the Code against her because she must sleep in her car due to her disability. *See Id.*

Sabrina also established a claim under the Eighth Amendment. Sedona enforced the Code against Sabrina even though sleeping in her car is an involuntary act that is a condition of her disability. *See Martin v. City of Boise*, 920 F.3d at 616-17. Sedona's two enforcements against Sabrina and the landlord's addendum demonstrate conditions precedent to initiation of criminal proceedings under the Code, and, thereby, implicate an Eighth Amendment violation if this Court also finds that Sabrina's frequent use of her car to sleep is an involuntary act compelled by her disability. *Id*. *See Johnson v. City of Grants Pass*, 72 F.4th 868, 883-84.

Finally, because Sabrina has established standing and prima facie allegations to support her ADA and Eighth Amendment claims, the district court erred in denying her leave to amend her proposed Fourth Amended Complaint. By dismissing the Complaint, the district court failed to allow Sabrina to establish

critical facts, among which included the two police enforcements by Sedona, the fact that the Agreement with the landlord can be rescinded if either Sabrina, the property owner or the property manager are warned or cited under the Code, and the enforcement of the Code on other persons similarly situated to her. Also, the district court erred in failing to consider that Sedona's past enforcements against Sabrina established a genuine risk of future enforcement against her. In the two orders by the district court before final dismissal, the district court gave Sabrina guidance concerning facts needed to establish standing. Sabrina, in good faith, alleged these additional facts in subsequent proposed amended complaints.

Because of these facts, this Court should find that Sabrina established standing and claims under the ADA and Eighth Amendment, that the district court erred in denying Sabrina leave to amend her Fourth Amended Complaint, and remand this case to the district court.

## STANDARD OF REVIEW

This Court reviews de novo the district court's determination of whether a party has standing. *See Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021) (reviewing de novo order granting motion to dismiss for lack of standing). "[U]nderlying factual findings are reviewed for clear error." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 531 (9th Cir. 2019); *see also Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008) (noting questions

of standing reviewed de novo, but underlying factual findings reviewed for clear error). Where the court relies on evidence to determine a Fed. R. Civ. P. 12(b)(1) motion, if issues of jurisdiction and substantive law are intertwined, the court must assume the truth of allegations in the complaint unless controverted by undisputed facts. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (1987).

Similarly, this Court reviews the district court's decision to grant the motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim de novo. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (reviewing de novo an order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Mudpie, Inc.*, 15 F.4th at 889.

Finally, this Court reviews the trial court's denial of a motion to amend the complaint for abuse of discretion. *See Perez v. Mortg. Elec. Registration Sys., Inc.*, 959 F.3d 334, 340 (9th Cir. 2020); *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC*, 946 F.3d 542, 545 (9th Cir. 2019).

## ARGUMENT

**I. Sabrina established standing under the ADA and Eighth Amendment because she has suffered an injury-in-fact, the injury is traceable to the challenged action of Sedona, and a favorable decision can redress the injury.**

"At the pleading stage, general factual allegations of injury ... may suffice, for on a motion to dismiss, we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. at 561. Sabrina established an injury-in-fact because of two enforcements from Sedona police, a warning in the form of a notice from her landlord that it would not renew her lease because of the Code, the Agreement which can be rescinded, and emotional injury traceable to the Code. ER-15-16, 19, 21, 110. Sabrina's initial, operative and proposed Fourth Amended Complaint provides factual allegations of injury to establish standing. ER-133, 125, 14.

Significant to Sabrina's factual allegations of injury are the police enforcements against her. Twice Sedona police awoke Sabrina in the middle of the night while she slept in her car and ordered her to move because of the Code. ER-15-16. During the first enforcement in November 2020, a Sedona police officer gave her a warning that he said would be placed in her file. ER-15-16. A warning under the Code is a prerequisite step to arrest, an affirmative element the City must establish prior to citation. S.C.C 9.10.010(E). Sedona is well aware of this requirement as demonstrated by its enforcement actions on others, issuing citations

to individuals who had been warned previously and issuing new warnings to individuals who had not received one. ER-49-76.

Sedona's Motion to Dismiss attempts to dispute the first enforcement by attaching a declaration from Chief Husted dated July 2021, stating that he could not locate any record of contact between Sedona and Sabrina involving the Code. ER-118-119. Sabrina disputed this statement through her affidavit attached to her response to the motion. ER-105. Sabrina's affidavit avers that she received a warning from the police officer and was forced under the Code to leave a trailhead where she was sleeping in her car. ER-105. Sedona attempts to continue their attack through another declaration by the Chief attached to its reply, which states he re-checked Sedona's records and again failed to locate a report concerning contact between Sedona and Sabrina regarding the Code. ER-89-90. However, because Chief Husted's declaration is controverted by Sabrina's affidavit, this Court must assume the truth of Sabrina's allegations. *Warren v. Fox Family Worldwide*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Sabrina's facts concerning the disputed first enforcement go to merits of the case because it evidences enforcement of the Code against her as alleged in her Eighth Amendment claim. "Where jurisdiction is intertwined with the merits, [the Court] must 'assume the truth of the allegations in the complaint ... unless controverted by undisputed facts in the record.'" *Roberts v. Corrothers*, 812 F.2d

1173, 1177 (9th Cir. 1987). Because Sabrina disputed the chief's statements in her affidavit, this Court must assume the truth asserted in Sabrina's proposed third and fourth complaints that she received a warning from Sedona in November 2020.

Another injury-in-fact suffered by Sabrina is the undisputed second enforcement by a Sedona police officer under the Code. On September 10, 2022. Sabrina was once again woken in the middle of the night by a Sedona police officer while she was sleeping in her car. ER-12-13, 16. The police officer ordered her to move her car and informed her there were no exceptions to the Code. ER-13. Sedona keeps a record of this enforcement. ER-12-13. Both Sabrina's operative complaint and proposed Fourth Amended Complaint demonstrate that she faces arrest and prosecution under the Code every time she sleeps in her car because of the disputed first enforcement and the undisputed second enforcement.

Sabrina faced a separate injury by Sedona when it refused to grant her requests for reasonable modification not to enforce the Code against her when she sleeps in her car. ER-120, 122, 129. Sedona violated the ADA when not agreeing to Sabrina's reasonable and necessary request to protect her from criminal violations and eviction because of actions directly related to her disability.

Additionally, Sabrina established an injury-in-fact by the notice from the landlord that they would not renew her lease until she stopped sleeping in her car because of the Code and that anytime she sleeps in her car is a non-curable violation

of the lease. ER-18-19, 110. While Sabrina continues to sleep in her car while living at her rental because of the Agreement with her landlord, the landlord can rescind the Agreement if the landlord or Sabrina receive a warning from Sedona concerning a violation of the Code. ER-21.

Sabrina's initial complaint, operative complaint and proposed Fourth Amended Complaint allege she has faced four injuries; two enforcements by Sedona, Sedona's failure to grant her reasonable modification requests, and the landlord's threat in the lease renewal Addendum requiring her to comply with the Code by not sleeping on the premise in her car. As a result of these concrete injuries, Sabrina can be arrested under the Code any night she is forced to sleep in her car because of her disability. Further, she faces mental deterioration, overwhelming anxiety, and depression from the fear of being arrested and losing her apartment. ER-20, 108. While Sedona attempts to dispute the first enforcement, Sabrina states the incident occurred and therefore, this Court should consider all injuries that support her standing in this case. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

Sabrina meets the second and third *Lujan* standing elements because her injuries are traceable to the enforcement of the Code by Sedona and its unwillingness to accept her requests for reasonable modification by agreeing not to enforce the Code while she sleeps in her car at her landlord's premises. *Id.* at 560. If Sabrina received a favorable decision at trial, the district court would find that Sedona may

not enforce the Code against her when she is sleeping in her car, and would no longer risk arrest or eviction and live with instability in her shelter options. *Id.*

Although this Court has analyzed standing differently concerning ADA and Eighth Amendment claims, the analysis of these claims are intertwined because both claims stem from Sabrina's disability. Notwithstanding the differences in analysis between ADA and Eighth Amendment claims, Sabrina has proved standing.

## II. Sabrina has standing for her ADA claim.

This Court has taken a broad view of the standing requirements under the ADA. *Doran v 7-Eleven*, 524 F.3d at 1039-40 ("Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" (quoting from *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

### A. Sabrina has standing because she has encountered a barrier violating the ADA.

This Court's broad view concerning standing under the ADA is exhibited in the fact that encounters with noncompliant barriers related to one's disability are sufficient to demonstrate an injury-in-fact for standing purposes. *Chapman v. Pier 1*, 631 F.3d at 947-48. "Even if a disabled plaintiff did not know about certain barriers when the plaintiff first filed suit, that plaintiff will have a 'personal stake in the outcome of the controversy' so long as his or her suit is limited to barriers related

to that person's particular disability." *Doran v 7-Eleven*, 524 F.3d at 1044 (quoting from *Massachusetts v. EPA*, 549 U.S. 497 (2007)).

Sabrina suffers from chronic obsessive-compulsive disorder which impairs her normal life functioning and requires her to sleep in her vehicle several nights a week. ER-102, 126. This Court has previously found that obsessive-compulsive disorder can be a qualifying disability under the ADA. *See Humphrey v. Memorial Hospital, Assn.*, 239 F.3d 1128, 1134 (9th Cir. 2001). The Code provides that sleeping in cars in public or private places in Sedona, an activity directly related to Sabrina's disability, is illegal and allows police to prosecute her under the Code. S.C.C. 9.10.010. Twice Sabrina has been forced to move her car in the middle of the night by Sedona police and, therefore, encountered barriers that violate the ADA. ER-15-16. Because Sabrina has encountered these barriers, she demonstrated injury-in-fact for standing purposes. *Chapman v. Pier 1*, 631 F.3d at 947-50; *Doran v. 7-Eleven*, 524 F.3d at 1039-40.

**B. Sabrina also has standing because she showed a sufficient likelihood that she will be wronged in a similar way.**

For ADA claims, individuals must also show "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. at 111. That is, she must establish a "real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. at 496. Sabrina will continue to sleep in her car several nights a week in violation of the Code. ER-22, 130. An ADA plaintiff can show a

likelihood of future injury when she intends to return to a noncompliant public accommodation and is therefore, likely to re-encounter a discriminatory architectural barrier. *Chapman v. Pier 1*, 631 F.3d at 947-50. "We hold that a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.' Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury'"). *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002). It is undisputed that Sabrina must sleep in her car several nights a week because of her disability and that she intends to continue this activity. However, because Sedona has denied her reasonable modification requests and enforced the Code against her, she continues to suffer imminent injury from future enforcement of the Code.

### C. Sabrina's injuries stem from Sedona's written policy.

A plaintiff may "demonstrate that [an] injury is likely to recur" by showing "that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Armstrong v. Davis*, 275 F.3d at 861. "[W]here the harm alleged is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the immediate future." *Id.* Sedona has written a Code that states it is illegal to sleep in a car on private or public property and allows police to warn and arrest violators. S.C.C. 9.10.010. As long as the Code exists, Sabrina faces a

likelihood of enforcement by the police because her disability compels her to sleep in her vehicle several nights a week. Additionally, because she continues to live in her apartment, she faces rescission of the Agreement by her landlord after any warning by the police to her or the landlord. In fact, the landlord can rescind her lease now because Sedona has previously issued her warnings. ER-12-13, 15-16.

In *Fortyune v. American Multi-Cinema*, 364 F.3d 1075 (9th Cir. 2004), the appellant went to the movie theatre several times a week and could not sit beside his spouse. This Court found that because a policy failed to provide that patrons who use wheelchairs can sit with their companions when a movie is sold out, the appellant could be denied the opportunity to sit with his companion at any time a movie is sold out. *Id.* at 1081-82. Because the appellant attended the movies several times a week the "frequency with which *Fortyune* continues to attend the theatre, the possibility of his injury recurring cannot be said to be so remote to preclude standing." *Id.* Similarly, because Sedona maintains and enforces the Code Sabrina faces enforcement on any of the several nights a week she sleeps in her vehicle and, therefore, has standing.

While this Court has not used the *Fortyune* analysis to review a challenge to a criminal law, both the policy in *Fortyune* and the Code in this case ensure that the injury is likely to recur unless relief is granted under the ADA. Surely, this Court would not provide disabled individuals broader flexibility concerning standing for

movie theatre policies than over criminal laws that contain the potential of six months in jail.

### D. The past wrongs of Sedona and the landlord are evidence of the risk of repeated injury.

While "[p]ast exposure to illegal conduct does not in itself show a present case or controversy…." *City of Los Angeles v. Lyons*, 461 U.S. at 102, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. at 496. Sedona's refusal to grant Sabrina's reasonable modification requests, their two police enforcements against her, the landlord's refusal to renew her lease based upon the Code and the Agreement's rescission clause are evidence of an immediate threat of repeated injury. *Id.*

Sabrina's initial complaint, operative complaint and proposed Fourth Amended Complaint state three significant past wrongs of Sedona to Sabrina that demonstrate her threat of repeated injury. First, Sedona denied Sabrina's requests for a reasonable modification. ER-120, 122, 129. Sedona denied not only Sabrina's request to not enforce the Code against her but even the limiting request to not enforce the Code against her when she sleeps in her car at the property she rents. ER-120, 122, 129. By denying this necessary and reasonable request, Sedona violated the ADA, and Sabrina is threatened with harm every evening she needs to sleep in her car because of her disability. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 690-91 (2001).

Second, Sedona's two past enforcements against Sabrina demonstrate her likelihood of injury. ER-12-13, 15-16. It is irrelevant that the past enforcements against Sabrina occurred on public property. The Code applies to private and public property, and Sedona has issued criminal citations to individuals violating the Code on private property. ER-17, 60, 76.

Notably, the second incident against Sabrina occurred after Sedona refused to grant Sabrina's requests for reasonable modification, after this case was filed in district court, and even after Sedona filed its Motion to Dismiss alleging Sabrina is not at risk of future enforcement by Sedona. In the September 10, 2022, enforcement by Sedona, the police officer forced her to move her car in the middle of the night because of the Code. ER-12-13, 16. When Sabrina asked about a possible accommodation to the Code, the police officer's statement that there are no exceptions is critical because it means Sedona can deny any requests for a reasonable modification under the ADA. ER-13. Even if no prosecution is undertaken against Sabrina, she faces the risk of repeated injury from being forced by Sedona police to move her car in the middle of the night because of the Code.

Third, the landlord's unwillingness to renew her lease unless she stopped sleeping in her vehicle because of the Code is evidence of a real and immediate threat of injury in the future. ER-110. Although Sabrina remains in her apartment currently,

the Agreement between Sabrina and the landlord states the lease can be rescinded if Sabrina or the landlord are provided warnings or arrested under the Code. ER-21.

### III. Sabrina has standing for her Eighth Amendment claim.

Because Sabrina's initial complaint, operative complaint and proposed Fourth Amended Complaint prove the three *Lujan* factors, she also has standing under the Eighth Amendment. When individuals challenge criminal statutes under the Eighth Amendment, courts typically require allegations showing a genuine threat of enforcement in determining whether an injury-in-fact exists. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298 (1979); *Susan B. Anthony List v. Driehas*, 573 US 149, 159-60 (2014). Sabrina has already faced enforcement of the statute, so she does not need to show a threat of future enforcement. *See Oklevueha v. Holder*, 676 F.3d at 836-37. Whether this Court finds *Oklevueha* applicable to this case or not, Sabrina can prove a genuine threat of future enforcement and, therefore, has standing concerning her Eighth Amendment claim.

#### A. Sedona previously enforced the Code against Sabrina.

If a statute has already been enforced against an individual, that individual does not need to show an additional threat of future prosecution to prove standing. *Id.* "We conclude, however, that the district court's focus on future prosecution is inapposite. Plaintiffs need not allege a threat of future prosecution because the statute has already been enforced against them. When the Government seized

Plaintiffs' marijuana pursuant to the CSA, a definite and concrete dispute regarding the lawfulness of that seizure came into existence." *Id.*

In *Teter v. Lopez*, 76 F.4th at 946, plaintiffs disposed of their butterfly knives because Hawaii outlawed butterfly knives. Plaintiffs plead that they would repurchase the butterfly knives if they were not illegal. *Id.* Like Sabrina, the statute challengers in *Teter* and *Oklevueha* were not arrested, nor could they state with certainty a date they would be arrested if they smoked marijuana or purchased butterfly knives. Sabrina, like the challengers in in *Teter* and *Oklevueha,* has already experienced enforcement of the Code when the police forced her to move her car twice in the middle of the night because of the Code, and warned her that she was subject to future arrest and prosecution for future violations of the Code. ER-12-13, 15-16.

Importantly, this Court in *Oklevueha* found that even when the enforcement activity did not occur recently, the enforcement activity was enough to not require allegations of a threat of future prosecution. *Oklevueha v. Holder*, 676 F.3d at 836-37. The *Oklevueha* plaintiffs had their marijuana taken from them two and half years prior to filing their challenge to the Hawaii law. *Id.* Sabrina's two enforcement activities occurred within six months before her initial complaint was filed and then almost one and one-half years after the initial complaint was filed. ER-12-13, 15-16. Sabrina's enforcements are more pronounced than the *Teter* and *Oklevueha* plaintiffs

because she already had specific warnings from her landlord and the Sedona police under the Code and is now subject to arrest and prosecution for any future violation of the Code. Because Sabrina has already experienced enforcement under the statute, she should not be required to prove a threat of future prosecution.

### B. Sabrina proved a genuine threat of enforcement.

Even if this Court finds that their holdings in *Oklevueha* and *Teter* do not apply to Sabrina, Sabrina's operative complaint and proposed Fourth Amended Complaint still prove a genuine threat of enforcement. To prove a genuine threat of enforcement, Courts must look to the following factors: "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Teter v. Lopez*, 76 F.4th at 946. These factors must be considered as a whole, in light of the totality of the circumstances, and not as a mandatory checklist. *Id.*

#### 1. Sabrina articulated a concrete plan to violate the Code.

The "concrete plan" element of the genuine threat inquiry is satisfied where plaintiffs had "more than a 'concrete plan'" to violate the laws at issue because they "actually did violate them on a number of occasions." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006). Sabrina's allegation that she has

in the past and will continue to violate of the Code several times each week is not in dispute. ER-21-22, 126, 130. Because she violates the Code weekly and states that she intends to continue to violate the Code because of her disability, Sabrina has satisfied this factor.

### 2. Sedona communicated a specific warning to Sabrina.

Sedona communicated two specific warnings to Sabrina. ER-15-16. In her first incident with police in November 2020, the police ordered her to move her car, issued her a warning and told her the incident is placed in her file. ER-105. During the second incident on September 10, 2022, the police again ordered Sabrina to move her car and issued her a warning that she was in violation of the Code. ER-12-13, 15-16. When she attempted to raise her need for accommodation, the police officer dismissed her concern and told her no exceptions to the Code are permitted. ER-13. Both enforcements failed to allow Sabrina a process in which to raise her claims. Although this Court has rejected the proposition that an individual "must always prove a specific warning or threat to initiate proceedings" to prove standing when challenging a statute, Sabrina has shown two specific threats by Sedona. *See Teter v. Lopez*, 76 F.4th at 946 (internal quotation omitted).

### 3. Sedona has a history of enforcing the Code.

Not only has Sedona enforced the Code against Sabrina, it has initiated criminal prosecutions of other persons under the Code who are similarly situated to

Sabrina. ER-49-76. These other persons were prosecuted for sleeping in a car on private property. ER-49-76. A history of past enforcement against parties similarly situated to plaintiffs cuts in favor of a conclusion that a threat is specific and credible. *See Adult Video Ass'n v. Barr*, 960 F.2d 781, 785 (9th Cir. 1992).

Sabrina found at least six enforcements of the Code without being provided an opportunity to conduct discovery. On October 5, 2021, six months after this case was filed, the police cited two individuals for sleeping in their cars on private property and a third individual received a warning for sleeping in his car. ER-55. Two individuals were cited because one received two previous warnings under the Code, and one received a previous warning. ER-55. The total warnings plus citations from this record are six enforcements. The other individuals are similarly situated to Sabrina because they were all sleeping in cars in Sedona. Like Sabrina, two of the individuals received previous warnings, which also means that they and Sabrina are alike because they repeatedly sleep in their cars.

Under the Code, it does not matter if the individuals are homeless or disabled, just that they are sleeping in a car on private or public property. In Sedona's Response to Plaintiff's Motion to File Third Amended Complaint, Sedona argues that Sabrina is not similarly situated to the other individuals because she has permission from a private property owner; this argument fails to acknowledge that Sabrina's permission conferred by the Agreement can be rescinded if the landlord

or Sabrina receives a warning from Sedona under the Code. ER-21. Permission from a private owner is not an exception under the Code, and the property owner can also be warned and prosecuted. S.C.C. 9.10.010(D).

Also, the fact that the police officer stated Sabrina informed her that, "she has a place to stay but that she sometimes likes to rest in nature…" fails to distinguish her from other individuals who faced enforcement under the Code. ER-13. Importantly, the police report fails to state whether the third person who received a warning is transient because, again, under the Code, it is unimportant if he has another place to stay. However, Sabrina is similar to the two individuals cited because during the nights Sabrina's disability compels her to sleep in her car, she does not have adequate, available alternative shelter. While the police officer's statement concerning resting in nature suggests that Sabrina may have a choice of where she sleeps, her affidavit, complaint, operative complaint and proposed Fourth Amended Complaint allege that she must sleep in her car because of her disability and that she finds public spots when there are no parking spots available at her landlord's property. ER-15, 103, 126, 135.

The question of whether Sabrina has no adequate, available shelter goes to the merits of her Eighth Amendment claim and, therefore, this Court must assume the truth of the allegations of the operative complaint and proposed Fourth Amended Complaint. *Warren v. Fox Family Worldwide*, 328 F.3d at 1139. Ultimately, for

standing purposes and the history of enforcement, it does not matter if Sabrina has a permanent home. As the police officer stated to Sabrina, there are no exceptions under the Code; therefore, all individuals sleeping in their cars in Sedona are similarly situated and subject to the Code.

Reviewing all of the factors as a whole, in light of the totality of the circumstances, and not as a mandatory checklist, Sabrina proved that she has standing under the Eighth Amendment. *Teter v. Lopez*, 76 F.4th at 946; *See Unified Data Servs., LLC*, 39 F.4th at 1210-11. Because Sabrina faced previous enforcement of the Code, she does not need to prove a credible threat of prosecution. *Oklevueha v. Holder*, 676 F.3d at 836-37; *Teter v. Lopez*, 76 F.4th at 946.

Even if Sabrina had to show a credible threat of prosecution, that threat is not speculative. She was woken twice from sleep in the middle of the night by police officers and ordered to move her car under the Code or face criminal arrest or prosecution. Both warnings were prerequisites under the Code to arrest and prosecution. She demonstrated each of the three factors that show a credible threat of enforcement: she continues to violate the Code, Sedona has enforced the Code twice against her, and at least six times against others similarly situated with at least two prosecutions. *Unified Data Servs. v. FTC*, 39 F.4th at 1210-11.

This Court has not established a requirement for the number of times a statute needs to be enforced against the challenger or others similarly situated. *See*

*Oklevueha v. Holder*, 676 F.3d at 836-37, (where the statute was only enforced once against the plaintiff). Sabrina proved that she has a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Sedona enforces the Code, and unless Sabrina receives a judicial ruling in her favor, she will continue to violate the law in Sedona and risk further enforcement, arrest, prosecution and eviction.

## IV. Sabrina stated Fed. R. Civ. P. 12(b)(6) claims under the ADA and Eighth Amendment.

This Court should find that Sabrina stated claims under the ADA and Eighth Amendment and remand the case to the district court because the issues presented are novel. Alternatively, because the district court failed to decide whether Sabrina stated claims for which relief can be granted, this Court may decide to remand to the district court for its ruling on this issue. Rule 12(b)(6) dismissals "are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development." *Baker v. Cuomo*, 58 F.3d 814, 818–19 (2d Cir. 1995), cert. denied sub nom., *Pataki v. Baker*, 516 U.S. 980 (1995), vacated in part on other grounds, 85 F.3d 919 (2d Cir. 1996) (en banc). "As we have previously observed, '[t]he court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.'" *Elec. Constr. & Maint. Co., Inc. v. Maeda*

*Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1357, at 601–03 (1969)).

Sabrina's case is novel because her disability requires her to request a reasonable modification under Title II of the ADA concerning enforcement of a criminal statute and to challenge enforcement of the statute under the Eighth Amendment. While case law since *Martin* is developing, at no point has this Court decided a case in which an individual asserts the protections of *Martin* against an anti-camping statute because her disability frequently deprives her of shelter forcing her to sleep in her car. Further discovery would allow Sabrina to develop her claims.

**V. Sabrina stated a claim under the ADA.**

Sabrina's operative complaint and proposed Fourth Amended Complaint demonstrate all factors required to establish her ADA claim. ER-22, 130. She is a qualified individual with a disability, excluded from participation in or denied the benefits of a public entity's services, programs or activities or otherwise discriminated against by a public entity, and this exclusion, denial or discrimination was by reason of her disability. *Cohen v. City of Culver*, 754 F.3d at 695. Sedona's Code is among the activities, programs and services that are subject to the ADA. *Id.*; *McGary v. City of Portland*, 386 F.3d 1259, 1268-69 (9th Cir. 2004) (Criminal municipal codes are considered benefits, programs, services and activities of a public entity subject to the ADA).

### A. Sabrina's obsessive-compulsive disorder establishes her as a qualified individual with a disability.

Sabrina lives with a severe, chronic obsessive-compulsive anxiety disorder disability which impairs her normal daily functioning and therefore, she is a qualified individual with a disability as defined in 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104, and entitled to the protections provided by the ADA. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7). ER-22. Sedona has failed to provide any evidence to dispute that Sabrina has a qualifying disability under the ADA.

### B. Sabrina was excluded from the benefit of the Code and Sedona discriminated against Sabrina.

Sabrina stated a claim under Title II of the ADA when she alleged that Sedona failed to provide her with a reasonable modification of the Code against her. "We hold that McGary adequately stated a claim under Title II of the ADA when he alleged that the city failed to reasonably accommodate his disability." *McGary v. City of Portland*, 386 F.3d at 1269-70.

If Sedona had agreed to Sabrina's requests for a reasonable modification, then Sabrina would be in compliance with Sedona's laws. *McGary v. City of Portland*, 386 F.3d at 1268-69. In *McGary,* an individual with a disability requested that Portland modify an ordinance to give him more time to clean his yard. *Id.* at 1269-70. Compliance with municipal codes is a benefit, services, programs, or activity of a public entity under the ADA. *Id*. The "benefit" McGary sought was to be allowed

sufficient time to comply with the city's code enforcement activities in a manner consistent with his disability. *Id.* Similar to McGary, Sabrina asks for reasonable modification of the Code so that it would not be enforced against her when she must sleep in her car because of her disability.

Sedona discriminated against Sabrina by denying her request for a reasonable modification and enforcing the Code against her twice. When a state's policies, practices or procedures discriminate against the disabled in violation of the ADA, Department of Justice regulations require reasonable modifications to such policies, practices or procedures "when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Sabrina's requests were reasonable and necessary so she will not be forced to be woken from sleep and move her car in the middle of the night, receive warnings that threaten arrest or prosecution, or face eviction from her landlord. Even after Sedona denied her first request, she revised her request to be more specific to the apartment complex. ER-129. The request is facially reasonable because it applies only to Sabrina, leaving in place application of the Code to all other persons. Because Sabrina's requests were reasonable, she alleged facts to meet the prima facie burden to state a claim under the ADA.

After Sabrina made two reasonable modification requests, Sedona failed to make an individualized assessment her requests. A reasonable modification under the ADA "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999). Sedona failed to inquire about any specific facts related to her disability, her specific needs related to sleeping in her car in public and private property, or explore any other modification that they could grant that would be less than her initial request. ER-23, 120-124.

For the foregoing reasons, Sabrina established her prima facie case discrimination under the ADA and Sedona failed to establish facts to demonstrate it engaged in an individualized consideration of reasonableness required by the ADA.

### C. Sedona's discrimination was by reason of Sabrina's disability.

Because Sabrina must sleep in her car due to her disability, Sedona's refusal to grant her a reasonable modification from enforcement of the Code puts Sabrina at constant risk of future requirements to move her car by police order, criminal citations, and eviction by her landlord.

## VI. Sabrina stated a claim under the Eighth Amendment.

### A. Sabrina stated a claim under the Eighth Amendment because Sedona enforced a criminal code against her because of her status.

In *Martin*, this Court put forth the "the principle . . . 'that the Eighth Amendment prohibits the state from punishing an involuntary act or condition if it is the unavoidable consequence of one's status or being.'" *Martin v. City of Boise*, 920 F.3d at 616–17 (quoting *Jones v. City of Los Angeles*, 444 F.3d 1118, 1135 (9th Cir. 2006), vacated, 505 F.3d 1006 (9th Cir. 2007)). *Martin* analyzed *Robinson v. California*, 370 U.S. 660 (1962) and *Powell v. Texas*, 392 U.S. 514, (1968) to find that the Eighth Amendment not only covers the status of an individual but also the involuntariness of a criminalized act if it is a condition of the status as a homeless person. *Martin v. City of Boise*, 920 F.3d at 616-17.

Sabrina's operative complaint and proposed Fourth Amended Complaint allege that she lives with severe, chronic obsessive-compulsive disorder and sleeps in her car solely because of her disability. ER-126, 15. She lacks the ability to, "turn off the mental command to not sleep in her house" and "[d]ue to her disability, Plaintiff (Sabrina) is unable to control the thoughts, emotions and behavior that cause her to sleep in her vehicle." ER-15, 24. As such, Sabrina's complaints, affidavit and supporting medical evidence provide factual proof that sleeping in her car is an involuntary act because of her status as a disabled woman.

Sedona has failed to provide evidence to dispute that Sabrina's allegation that she is unable to control sleeping in her car besides an incident report which a police officer states Sabrina allegedly said that she "sometimes likes to rest in nature." ER-13. At this stage in the court process, Sabrina's factual allegations that address whether she has stated a claim must be taken as true. *Western Center for Journalism v. Cederquist*, 235 F.3d 1153, 1154 (9th Cir. 2000); *Mudpie*, 15 F.4th at 889. Therefore, Sabrina's factual allegations that her disability causes her to involuntarily sleep in her car must be taken as true.

### B. Sabrina stated a claim under the Eighth Amendment because Sedona enforced a criminal code against her when she has no adequate available alternative shelter.

"Persons are involuntarily homeless if they do not have 'access to adequate temporary shelter, whether because they have [no] means to pay for it or because it is [not] realistically available to them for free.'" *Johnson v. City of Grants Pass*, 72 F.4th at 945 n.2. (quoting from *Martin v. City of Boise*, 920 F.3d at 617 n.8). A city cannot prosecute individuals who cannot obtain shelter for involuntarily sitting, lying and sleeping in public. *Martin v. City of Boise*, 920 F.3d at 916-17. Additionally, this Court has found that ordinances concerning prohibition of sleeping in cars should be reviewed using the *Martin v. City of Boise* standards. *Johnson v. City of Grants Pass*, 72 F.4th at 883-84.

Sabrina's disability causes her to have no other adequate available alternative shelter on several nights a week. Her disability requires her to sleep in her car and during those evenings she is transient because she cannot enter her rented apartment. ER-17. There are no homeless shelters in Sedona. ER-24. The closest homeless shelter is 19 miles from Sedona in the city of Cottonwood with only 20 beds and only authorized to accept individuals when the temperature falls below 35 degrees. ER-24. Because of her disability she cannot even go to a shelter if there was one in Sedona. ER-106.

## VII. Because Sabrina has standing to bring her ADA and Eighth Amendment claims and stated claims that relief can be granted under those claims, the district court erred in denying Sabrina's Motion for Leave to File Amended Complaint.

The district court erred by not allowing Sabrina to plead facts which establish her standing and prima facie allegations stating her claims when it denied her leave to file her second, third, and fourth proposed amended complaints. The following facts are critical in establishing standing and were submitted after the Amended Complaint was filed on June 21, 2021.

The November 2020 and October 2022 enforcements against Sabrina by Sedona. ER-15-16.

The enforcement of the Code by Sedona on others in October 2021. ER-17.

The fact that Sabrina's settlement with her landlord can be rescinded if Sabrina or her landlord are warned or charged in violation of the Code. ER-21.

The fact that Sabrina's second warning on September 10, 2022, came after she entered into the settlement Agreement with the landlord. ER-16, 21.

The fact the closest homeless shelter is in Cottonwood and is very limited in its capacity and availability. ER-24.

Sabrina is transient when she sleeps in vehicle due to her disability. ER-17.

Facts concerning Sabrina's mental deterioration because of Sedona's enforcement of the Code. ER-20.

By denying Sabrina's Motion for Leave to File Fourth Amended Complaint, the district court denied critical facts that establish the enforcement by Sedona of the Code against Sabrina and third parties, along with the fact that Sabrina's housing is directly contingent on Sedona's actions. These facts establish injury directly in the past to Sabrina and concrete risk of imminent injury in the future.

**A. Sabrina established the facts required by the district court.**

Sabrina followed the district court's guidance and in good faith attempted to meet the district court's request for specific facts to establish standing. (*See Eminence Capital, LLC. v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (where the Court found the district court erred in failing to grant leave to amend when appellant attempted to amend complaint three times in good faith following district court's guidance).

In the district court's first Order on February 28, 2022, it stated that, "[t]o the extent that Plaintiff can show that her property manager has invalidated the settlement agreement *and/or* Defendant intends to prosecute Plaintiff despite the agreement, she may be able to allege sufficient injury giving her standing to challenge the Code" (emphasis added). ER-87.

Sabrina responded to this Order stating that the Agreement ends May 31, 2022, and can be rescinded by any warning or citation by Sedona to Sabrina, the owner or property manager. ER-43. These facts are directly on point to the district court's request and the district court should have allowed Sabrina to amend her complaint and determined that she has standing. Sabrina also added facts in her proposed Third Amended Complaint that Sedona issued citations to other individuals similarly situated to her after previous warnings had been given to them so the fact that Sabrina was previously warned by Sedona demonstrates that she can face enforcement on any given night she sleeps in her car. ER-39. Despite showing the specific facts requested by the district court, the district court again denied Sabrina's Motion for Leave to Amend.

Once Sabrina provided the facts requested by the district court, the court next ordered on February 8, 2023, "If Plaintiff can allege facts that do more than speculate that the City intends to enforce the Code against her, the Court will allow her one more chance to do so." ER-33.

In response to the district court's order, Sabrina alleged in her proposed Fourth Amended Complaint that in October 2022, one and one-half years after she filed her initial complaint, she once again faced enforcement by Sedona and was ordered to move her car or face citation. ER-16. This incident is undisputed and substantiated by Sedona. ER-12-13. Again, Sabrina directly provided facts requested by the district court and yet, the district court again denied Sabrina's Motion for Leave to File Fourth Amended Complaint.

### B. The district court failed to consider this Court's broad view of standing under the ADA.

The district court erred in limiting its analysis to pre-enforcement challenges against statutes without considering any of this Court's established case law for standing under the ADA, as discussed above. For instance, this Court failed to consider the *Chapman* and *Doran* cases which provide that if disabled persons encounter a noncompliant barrier related to their disability, they have established facts sufficient to demonstrate an injury-in-fact. *Chapman v. Pier 1*, 631 F.3d 947-50; *Doran v. 7-Eleven*, 524 F.3d at 1039-40.

Further, the district court erred in focusing on proof of a genuine threat of imminent prosecution instead of the ADA standing requirements articulated in *Chapman* and *Doran* which require proof that the plaintiff encountered a non-compliant barrier and a sufficient likelihood that they will be wronged again. The district court failed to consider that Sabrina meets the ADA standard because she

intends to continue to sleep in her car and, therefore, return several times a week to non-compliant shelter where she is at risk of suffering imminent injury. *Pickern v. Holiday Quality Foods*, 293 F.3d at 1138.

Additionally, the district court failed to consider that because Sabrina's injuries stem from Sedona's Code which is comparable to a written policy, she has established sufficient likelihood she will be wronged again. *Armstrong v. Davis*, 275 F.3d at 861; *Fortyune v. American Multi-Cinema*, 364 F.3d at 1081-82.

### C. The district court erred in not considering that past enforcements against Sabrina established a genuine risk of future enforcement.

The district court failed to consider that Sabrina's past two enforcements demonstrated that Sabrina does not need to prove a future threat of enforcement by Sedona. *Oklevueha v. Holder*, 676 F.3d at 836-37.

Further, Sabrina continues to violate the law weekly and has been issued warnings that the Code requires to support her arrest and prosecution. ER-12-13, 15-16, 107. Sedona has proved by past enforcements that occurred after Sabrina's initial complaint was filed that it has and will enforce the Code against Sabrina. ER-12-13, 49-46. Notably, these enforcements came after Sedona's February 22, 2021, letter in which he wrote that "in light of *Martin v. Boise*, the City generally does not prosecute sleeping in public places when there is no room at a homeless shelter…."

ER-121. The police officer who warned Sabrina on September 10, 2022, stated to her that there are no exceptions to the Code. ER-13.

The district court erroneously found, "the two warnings insufficient to support a specific warning or threat to initiate prosecution under the Code," ER-8, when the plain language of the Code states that a warning is part of the enforcement process. S.C.C. 9.10.010(E). In each of her warnings, Sabrina was ordered to move her car to a different location causing disruption to her sleep. ER-15-16. Importantly, under the Code, police will not tell individuals which days they will enforce the Code; only the police know which days the Code will be enforced when people sleep in their vehicles on public and private property. It would be impossible for Sabrina to provide the court with the exact day she will be arrested. As long as Sabrina continues to sleep in her car, she faces a genuine threat of enforcement.

## CONCLUSION

For the foregoing reasons, this Court should find that Sabrina has standing and has stated claims concerning her ADA and Eighth Amendment causes of action. The district court's order denying Sabrina's Motion to Leave to File Fourth Amended Complaint should be reversed, and this case remanded to the district court so her case can proceed to discovery and trial. If this Court finds that Sabrina has standing, it could also choose to remand the case to the district court for further briefing on the claims.

Dated: October 31, 2023.

By: /s Pamela Bridge
Pamela Bridge, Esq.
Martin J. Coleman, Esq.
Bret Rasner, Esq.
Community Legal Services, Inc.
141 S. McCormick St., Suite 200
Prescott, AZ 86303
(928) 445-9240
yavapai@clsaz.org
*Attorneys for Plaintiff/Appellant*

**CERTIFICATE OF COMPLIANCE FOR BRIEFS**

**Civ-23-15912**

I am the attorney for Plaintiff/Appellant.

This brief contains 13024 words, excluding the items exempted by. Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

s/ Pamela Bridge October 31, 2023

## CERTIFICATE OF SERVICE

I, Pamela Bridge, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 31, 2023.

## APPELLANT'S OPENING BRIEF

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 31, 2023

By: s/ Pamela Bridge